**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff/Appellee,<br><br>vs.<br><br>ABIMAEL ROBLERO-SOLIS,<br><br>      Defendant/Appellant. | No. CR 08-271-TUC-CKJ<br><br>No. 08-11418 MP |
| UNITED STATES OF AMERICA,<br><br>      Plaintiff/Appellee,<br><br>vs.<br><br>JANET ROBLERO-PEREZ<br><br>      Defendant/Appellant. | No. CR 08-272-TUC-CKJ<br><br>No. 08-11434 MP<br><br>**ORDER** |

Pending before the Court are Appellants' appeals from their judgments of convictions and sentences for violations of Title 8, U.S.C. § 1325, unlawfully entering the United States of America from Mexico at a time or place other than that designated by an Immigration Officer of the United States of America. Because these appeals involve the same proceedings and the same issues, the Court will address the appeals together.

*Factual and Procedural Background*

Abimael Roblero-Solis and Janet Roblero Perez ("Appellants") appeared in court

before a magistrate judge on March 5, 2008, at 1:30 p.m. under the Arizona Denial Prosecution Initiative ("ADPI").[1] A court interpreter was present to translate for Appellants. Forty-seven defendants answered present for roll call at the beginning of the proceedings. The court inquired of the attorneys whether there was any objection to conducting the proceedings as a group, and Appellants' attorney responded with objection. The court ordered that Appellants be removed from the courtroom; however, Appellants remained. Appellants' counsel clarified that he was requesting that the court ask each individual defendant "whether he or she understood each of his or her rights, that a factual basis was inquired into as to each individual defendant, and that each be addressed by the court individually at time of sentencing." Appellant's Opening Mem. at 4. The magistrate judge addressed the forty-seven defendants collectively. She collectively instructed all of the defendants that each person must answer any questions asked of the group individually and that she needed to see and hear their response. The magistrate judge advised the defendants as a group of their rights and the possible consequences of pleading guilty.

On several occasions throughout the proceedings, the magistrate judge asked the defendants as a group whether they understood her statements, to which the defendants responded with "general yes answers." However, the court took the defendants' pleas of guilty individually, including Appellants. The court addressed the group collectively once again in order to establish the factual basis for the guilty pleas, and then proceeded to sentence the defendants in groups of eighteen defendants at a time. The court imposed a sentence of time served upon Appellants.

After Appellants had been sentenced, the magistrate judge addressed Appellants' counsel to clarify counsel's concerns regarding the plea colloquy. The magistrate judge then made further inquiries of the Appellants in order to further establish the factual basis

---

[1]The government asserts in its Answering Memorandum that Appellants met with their attorney in the morning between 9:00 a.m. and 12:00 p.m. The Court cannot find support for this assertion in the record.

- 2 -

1 for Appellants' guilty pleas and to determine that they waived their right to a trial.
2 Following these inquiries, the magistrate judge addressed Appellants' counsel and asked
3 whether there were any further issues to address, to which counsel responded in the
4 negative.

*Standard of Review*

This Court reviews *de novo* whether an appellant's guilty plea met the constitutional requirements of due process and the requirements of Fed.R.Crim.P. 11. *See Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) ("[T]he governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law . . . and not a question of fact . . ."); *United States v. Pena*, 314 F.3d 1152, 1155 (9th Cir. 2003) ("The adequacy of a Rule 11 plea colloquy is subject to *de novo* review.") If an error affecting an appellant's constitutional rights was preserved in the record through objection, the appellee has the burden to prove that any such error was harmless beyond a reasonable doubt. *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n.7 (2004). However, if the error was *not* preserved in the record by timely objection, the Rule 11 error is subject to plain error review. *Id.* at 76. Appellants argue that the same standard of proof should apply when a Rule 11 error is preserved. Appellant's Opening Mem. at 8. The purpose of Rule 11 is "to produce a complete record at the time the plea is entered of the factors relevant to [the] determination of voluntariness [required by the Constitution] in order to suppress frivolous attacks on the constitutional validity of the guilty plea." *Guthrie v. United States*, 517 F.2d 416, 418 (1975).

"Rule 11 . . . instructs that not every violation of its terms calls for reversal of conviction by entitling the defendant to withdraw his guilty plea. 'A variance from the requirements of this rule is harmless error if it does not affect substantial rights.'" *Dominguez Benitez*, 542 U.S. at 80 (quoting Fed. R. Crim. P. 11(h)). Whether or not an error is plain only goes to the issue of reviewability and not to the issue of whether reversal is warranted; therefore, an error that was not preserved may be so plain as to be

1 reviewable yet still be harmless and thus not justify reversal. *United States v. Lopez*, 575
2 F.2d 681, 685 (9th Cir. 1978). In order for a court to be able to exercise its discretion and
3 reverse under the plain error standard, the plain error must affect substantial rights and
4 also seriously affect the "fairness, integrity, or public reputation of judicial proceedings."
5 *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006). "An error is plain if it is 'clear'
6 or 'obvious' under current law." *Id.* at 569. When an error affects the outcome of the
7 proceedings, it prejudices the substantial rights of a defendant. *Id.* However, "a
8 defendant who seeks reversal of his conviction after a guilty plea, on the ground that the
9 district court committed plain error under Rule 11, must show a reasonable probability
10 that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S.
11 at 83.

12 Appellants assert that the Rule 11 error was preserved because defense counsel
13 timely objected when the magistrate judge inquired as to whether any defense counsel
14 objected to conducting the proceedings as a group. Appellant's Opening Mem. at 7.
15 Appellants argue that because the error was preserved, the government has the burden
16 to prove that the error was harmless beyond a reasonable doubt. *Id.*

17 The government argues that the Appellant did not preserve the alleged error and,
18 therefore, plain error review is appropriate. Government Answering Mem. at 8.
19 Specifically, the government alleges that Appellants "failed to preserve the noticed error
20 when counsel responded to inquiry from the magistrate by stating, 'I don't think there is
21 anything further.'" (*Id.*) Appellants argue, however, that when the magistrate made this
22 inquiry, the court had already taken Appellants' plea of guilty and sentenced Appellants
23 and that the inquiry was "legally irrelevant at that point." Appellant's Opening Mem. at
24 6. The Court notes that the magistrate made no new findings after that last inquiry.
25 Additionally, "[a]fter the court imposes sentence, the defendant may not withdraw a plea
26 of guilty...and the plea may be set aside only on direct appeal or collateral attack."
27 Fed.R.Crim.P. 11(e).

28 The government also argues that even if Appellant did initially preserve the error,

- 4 -

1 Appellants waived their right to appeal any Rule 11 error by "intentionally continuing to
2 participate in the proceeding." Government Answering Mem. at 8. However, Appellants
3 correctly point out that the government's argument establishes a novel and unprecedented
4 hurdle on appeal. Appellant's Reply Mem. at 2. A party that makes an objection below
5 is not required or expected to withdraw from participation in the court proceeding itself
6 in order to preserve the objection on appeal. To hold otherwise would be at odds with the
7 well-established "final judgment rule" outlined in 28 U.S.C. § 1291. If Appellants had
8 refused to participate in the proceedings, the court could not have rendered a final
9 judgment, and no federal appellate court would have jurisdiction to hear the appeal under
10 §1291. The Court finds that Appellants initially preserved the error.

11 However, the magistrate judge subsequently sought to address the objections raised
12 by Appellants. She made further inquiries into the rights being waived by Appellants and
13 further inquires regarding the factual basis of the charges against Appellants. Following
14 these inquiries, the magistrate judge addressed Appellants' counsel and asked whether
15 there were any further issues to address, to which counsel responded in the negative. At
16 this point, no further objections were raised. The Ninth Circuit has stated:

> The change of plea proceeding was not the last chance to inquire, nor was this the last information the district court had. Rule 11(f) says that the court "should not enter a judgment" on a guilty plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." That means that the district court's duty to inquire into a factual basis does not end when the plea is taken. It continues until judgment is entered.

*United States v. Timbana*, 222F.3d 688, 712 (9th Cir. 2000). Further, "the law continues to be that the legally effective sentence is the oral sentence and the judgment and commitment order is mere evidence of the sentence." *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987), collecting cases. In other words, courts have recognized the distinction between a judgment and the entry of judgment. *See Wilson v. Bell*, 137 F.2d 716 (6th Cir. 1943) (The judgment in a criminal case is the pronouncement by the judge from the bench and not the entry of the judgment by the clerk.); Fed.R.Crim.P. 32(k)(1) ("In the judgment of conviction, the court must set forth the plea, the jury verdict or the

- 5 -

1  court's findings, the adjudication, and the sentence. . . . The judge must sign the
2  judgment, and the clerk must enter it.").

3  In the appellate process, "[a] judgment or order is entered for purposes of this Rule
4  4(b) when it is entered on the criminal docket." Fed.R.App.P. 4(b)(6). The Court is not
5  aware of any other authority for a different determination of when judgment is entered.
6  In this case, the magistrate judge pronounced judgment on March 5, 2008, but the Clerk
7  of the Court did not enter that judgment on the docket sheet until after the entire
8  proceeding was concluded. Indeed, the judgment was not entered until March 6, 2008.

9  The magistrate judge, therefore, was entitled to ensure compliance with
10 Fed.R.Crim.P. 11 and due process throughout the entire proceeding. Appellants'
11 argument that any objections were legally irrelevant after the pronouncement of judgment
12 is simply not supported by any authority. Rather, it was entirely appropriate and
13 reasonable for the magistrate judge to inquire if any corrections or further inquiry was
14 needed. As a practical matter, the Court notes that such an inquiry is routine to ensure
15 that the Court has not omitted anything and to provide counsel an opportunity to raise any
16 issues that might need to be addressed. The Court finds that, by failing to renew any
17 objection after the magistrate judge made further inquiries of Appellants, Appellants have
18 not preserved any alleged error in the ADPI proceedings. Therefore, the unpreserved
19 Rule 11 error is subject to plain error review. *Dominguez Benitez*, 542 U.S. at 76.

20

21 *Fed.R.Crim.P. 11 Violation*

22 Fed.R.Crim.P. 11(b) lays out the requirements a court must satisfy before it can
23 accept a plea of guilty. The court must address the defendant personally in open court
24 and inform defendant of, and determine that the defendant understands, among other
25 things, the right to plead not guilty and the right to a jury trial. Fed.R.Crim.P. 11(b)(1).
26 "Before accepting a plea of guilty...the court must address the defendant personally in
27 open court and determine that the plea is voluntary..." Fed.R.Crim.P. 11(b)(2). "Before
28 entering judgment on a guilty plea, the court must determine that there is a factual basis

- 6 -

1 for the plea." Fed.R.Crim.P. 11(b)(3).  For a guilty plea to be valid, a defendant must
2 enter the plea knowingly and voluntarily.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1968).
3 The Court cannot presume that a waiver of constitutional rights was knowing and
4 voluntary from a silent record.  *Id.* at 243.  However, specific articulation of the
5 defendant's rights is not required as long as the record affirmatively shows that the
6 defendant entered its guilty plea voluntarily and intelligently.  *Wilkins v. Erickson*, 505
7 F.2d 761, 763 (9th Cir. 1974).

8 A plea of guilty involves the waiver of a number of constitutional rights.  *Boykin*,
9 395 U.S. at 243.  "For this waiver to be valid...it must be an intentional relinquishment
10 or abandonment of a known right or privilege."  *Id.*, *internal quotations omitted*.  Also,
11 "[i]f there is a guilty plea...the record must include the inquiries and advice to the
12 defendant required under Rule 11(b) . . ."  Fed.R.Crim.P. 11(g).  Appellants argue that
13 the record does not indicate whether they entered their guilty pleas voluntarily and
14 intelligently.  Appellant's Opening Mem. at 11  ("Before being sentenced...appellant
15 responded with 'present' and 'guilty,' but other than these two instances, no record was
16 created for review to determine that appellant was answering individually the questions
17 of the court in the affirmative, much less understanding the statements or questions of the
18 court.").  Appellants concede that the court instructed anyone in the courtroom who did
19 not understand a question or what was taking place to stand and seek clarification from
20 the court.  *Id.* at 11-12.  However, Appellants argue that "[g]roup responses and presumed
21 acquiescence does not create a record which would demonstrate appellant's knowing and
22 voluntary waiver of his rights."  *Id.* at 12.  Other than the plain language of Rule 11,
23 which uses the word "personally" to describe how a court must address the defendant
24 when accepting a plea of guilty, Appellants cite no authority to support its interpretation
25 of Rule 11's requirements.  "[T]he plain language interpretation of a statute enjoys a
26 robust presumption in its favor, [but] Congress cannot, in every instance, be counted on
27 to have said what it meant or to have meant what it said."  *FBI v. Abramson*, 456 U.S.
28 615, 638 (1982) (Blackmun, J., dissenting), *citing United States v. Wiltberger*, 18 U.S.

1 | 76, 95 (1820).  The Supreme Court explained in *McCarthy v. United States* that "[p]rior
2 | to the 1966 amendment . . . not all district judges personally interrogated defendants
3 | before accepting their guilty pleas.  With an awareness of the confusion over the Rule's
4 | requirements in this respect, [it was amended] to add a provision expressly requiring the
5 | court to address the defendant personally." 394 U.S. 459, 466 (1969).  The Court further
6 | explained that "[t]his clarification of the judge's responsibilities . . . furthers both of the
7 | Rule's purposes.  By personally interrogating the defendant, not only will the judge be
8 | better able to ascertain the plea's voluntariness, but he will also develop a more complete
9 | record to support his determination in a subsequent post-conviction attack." *Id.*

10 |       Appellants correctly assert that "[n]owhere does the record indicate whether
11 | appellant joined in any of the general affirmative answers noted by the interpreter."
12 | Appellant's Opening Memo. at 12.  However, Appellants were represented by counsel,
13 | and it is not unreasonable to expect counsel to interject for his clients in the event that his
14 | clients are not answering the court's inquiries or following the  court's instructions.

15 |       The fact that the proceedings are *en masse* is not enough to support a finding that
16 | the proceedings violate due process; however, the Ninth Circuit has held that *en*
17 | *masse* proceedings can violate due process if they are not carried out in a way that
18 | demonstrates the defendant's individualized understanding and waiver. *See United States*
19 | *v. Lopez-Vasquez*, 1 F.3d 751 (9th Cir. 1993) (concluding that mass silent waiver
20 | impermissibly presumes acquiescence and fails to overcome the presumption against
21 | waiver).  However, the defendant in *Lopez-Vazquez* was not represented by counsel.

22 |       It is worth noting that the record contains entries of "[g]eneral 'yes' response" that
23 | refer to all the defendants at the proceeding, *see e.g.* Appellant's Excerpts of R. at 11,
24 | while there are other entries of "[g]eneral 'yes' response" that only refer to select
25 | defendants, *see e.g. id.* at 17, and it is not possible to discern who exactly is giving the
26 | general "yes" responses in those instances.  These same general responses are prevalent
27 | when the magistrate judge was establishing the factual basis of the guilty pleas as Rule
28 | 11 requires.  *See e.g. id.* at 26.  There is no way to discern from the record who exactly

1  is answering. However, the magistrate judge had specifically instructed anyone in the
2  courtroom who did not understand a question or what was taking place to stand and seek
3  clarification from the court.

4        The Seventh Circuit has stated that addressing multiple defendants together is
5  sufficient to meet the Rule 11 requirement that defendants are addressed personally,
6  although the court specifically stated "it is not the preferred method." *United States v.*
7  *Fels*, 599 F.2d 142, 146 (7th Cir. 1979). However, in *Fels* the district court spoke
8  simultaneously to only three defendants not forty-seven. *Id.* at 144. The Seventh Circuit
9  emphasized that the "personally addressed" requirement of Rule 11 was satisfied when
10 "the district court specifically calls the attention of all of the defendants and speaks
11 directly to them and not through their attorney or the prosecutor" regardless of the
12 number of defendants. *Id*. at 146.

13       The Eighth Circuit also found that the court could personally address a defendant
14 by asking one question of multiple defendants. *United States v. Hobson*, 686 F.2d 628,
15 630 (8th Cir. 1981). However, in *Hobson* the court did require each defendant to respond
16 individually. *Id*. The opinion does not indicate how many defendants were present nor
17 does it indicate whether the court required individual answers on the transcript or just
18 requested that all defendants individually answer to create a group answer.

19       The American Heritage Dictionary defines personally as "without intervention of
20 another." The American Heritage Dictionary, Fourth Edition.

21       *Fels, Hobson*, and the dictionary definition suggests that the magistrate judge did
22 personally address all forty-seven defendants at once when the magistrate went through
23 the elements of the crime, the waivers, and the potential consequences. The magistrate
24 judge asked questions of the defendants and received answers directly from the
25 defendants. The Court finds that the magistrate judge personally addressed Appellants
26 in open court and determined that their guilty pleas were voluntary in compliance with
27 Fed.R.Crim.P. 11(b)(2).

28       The Fifth Circuit has stated that Rule 11 is meant to ensure the court addresses

- 9 -

three core concerns "(1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of his plea." *United States v. Johnson*, 1 F.3d 296, 300 (5th Cir. 1993). Additionally, Rule 11 protects the "integrity of the courts" by requiring the Court to provide adequate protection for the defendant and ensures "judicial impartiality after plea negotiations are completed" allowing the Court to determine fairness of a plea. *United States v. Racich,* 35 F. Supp.2d 1206, 1211 (S.D. Cal. 1999).

A court may find a factual basis to satisfy Rule 11 in anything that appears on the record. *United States v. Fountain*, 777 F.2d 351, 356 (7th Cir. 1985). The Appellants answered they were not a citizen or national of the United States, they did not possess valid immigration documents, they had not received permission from an official to enter or remain in the United States, and that they did not claim to have a legal right to be in the United States. This is a sufficient factual basis to comply with Rule 11. The Court finds that plain error has not been established in the plea proceeding.

*Due Process*

A plea of guilty forgoes a fair trial and other constitutional guarantees. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450 (2002). Due to the significance of waived rights, due process requires the defendant must enter the agreement voluntarily, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. *Id*. at 629. Voluntariness is a question of law and must be demonstrated considering the totality of the circumstances surrounding the plea. *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463 (1970). "Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.'" *Barker v. Wingo*, 407 U.S. 514, 525, 92 S. Ct. 2182, 2189, 33 L. Ed. 2d 101 (1972).

"The process due in any given instance is determined by weighing "the private interest that will be affected by the official action" against the Government's asserted

1  interest, "including the function involved" and the burdens the Government would face
2  in providing greater process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting
3  *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). In *Boykin v. Alabama,* the Supreme
4  Court determined that due process requires the Court create a record adequate for review
5  that the waived rights were waived intelligently and understandably. 395 U.S. 238, 243-
6  44, 89 S. Ct. 1709 (1969).

7       The Court may look to deportation hearings to determine whether the Appellants'
8  hearing complied with due process. An alleged alien at a deportation hearing is not
9  entitled to all the constitutional rights as the appellant (an alien at a deportation hearing
10  is not entitled to court appointed counsel, the exclusionary rule, and certain protections
11  from the fifth amendment). However, an alien at a deportation hearing is entitled to due
12  process. *United States v. Nicholas-Armenta*, 763 F.2d 1089, 1090 (9th Cir. 1985).

13       In *Lopez-Vazquez*, the Ninth Circuit ruled a mass silent waiver of the right to
14  appeal violated due process. However, the Ninth Circuit has also found due process was
15  not violated when only a single translated reply for a group of eight alleged aliens
16  waiving their right to counsel, admitting deportation, and waiving their right to appeal.
17  *United States v. Barraza-Leon*, 575 F.2d 218, 221 (9th Cir. 1978). "While it would be
18  more helpful to have a record of the precise, individual statements of each respondent in
19  multiple deportation hearings, due process does not require it." *Id*.

20       The Ninth Circuit has also upheld a mass deportation hearing involving twenty-
21  five and twenty-nine respondents. *United States v. Calles-Pineda*, 627 F.2d 976, 977 (9th
22  Cir. 1980). The Ninth Circuit indicated the procedures used in *Calles-Pineda* were
23  "substantially identical" to the procedures used in *Barraza-Leon*. *Id*. The Ninth Circuit
24  also stated "mass deportation hearings must have an outer limit [to comply with due
25  process]. That limit has been reached in these cases. We would not expect a panel of this
26  court to approve mass hearings any larger than those conducted in these cases. We are
27  unwilling, however, to draw the line to exclude these cases without prior warning." *Id*.
28       In the cases before this Court, the magistrate judge explored whether the pleas

- 11 -

1  were entered voluntarily, knowingly, intelligently, and with sufficient awareness of the
2  relevant circumstances and likely consequences several times. The magistrate judge
3  instructed all of the defendants collectively that each person must answer any questions
4  asked of the group individually and that she needed to see and hear their response. The
5  magistrate judge advised the defendants as a group of their rights and the possible
6  consequences of pleading guilty. On several occasions throughout the proceedings, the
7  magistrate judge asked the defendants as a group whether they understood her statements,
8  to which the defendants responded with "general yes answers." However, the court took
9  the defendants' pleas of guilty individually, including Appellants. The court addressed
10 the group collectively once again in order to establish the factual basis for the guilty
11 pleas, and then proceeded to sentencing the defendants in groups of eighteen defendants
12 at a time. The court imposed a sentence of time served upon Appellants. After
13 Appellants had been sentenced, the magistrate judge addressed Appellants' counsel to
14 clarify counsel's concerns regarding the plea colloquy. The magistrate judge then made
15 further inquiries of the Appellants in order to further establish the factual basis for
16 Appellants' guilty pleas and to determine that they waived their right to a trial.

17      Furthermore, the court asked the twelve lawyers present if they believed their
18 clients were competent and pleading guilty voluntarily; the court received "[g]eneral
19 'yes' answers."

20      This hearing had forty-seven defendants which is beyond the outer-limits of a mass
21 hearing set in *Calles-Pineda*. However, in this case the forty-seven defendants were
22 represented by twelve attorneys. While one of forty-seven defendants may not answer
23 a question by the court and go unnoticed or potentially even answer a waiver question in
24 the negative and go unnoticed, the defense attorney should ensure their defendants'
25 voices are heard. Additionally, it is highly unlikely that an attorney's silence or negative
26 answer would go unnoticed when the court questioned the attorneys as a group. In the
27 Appellants' cases, their attorney's objection was noticed by the court initially and the
28 magistrate judge received direct individual answers from the attorney that the Appellant

1  was aware of the rights he was waiving and that a factual basis existed for the plea. The
2  attorney then affirmatively stated that the Appellant was competent and pleading guilty
3  voluntarily.

4  The Appellants argue a more protective process is due in this case than at a
5  deportation hearing. The assistance of counsel provided a more protective process.
6  Unlike in a civil deportation hearing, the Appellants in this case potentially faced time
7  in prison; the assistance of counsel is sufficient to offset this raised private interest. The
8  Appellants do not argue in what other ways the Appellants' private interest was increased
9  as opposed to the deportation hearing in *Barraza-Leon*. In both cases the private interest
10 is very high: the defendant is facing deportation, a record is created that the defendant
11 remained in the country illegally, the defendant has made a record that they do not have
12 a defense to being in the country (i.e. born in the United States), and the results of the
13 deportation hearing may be used in future criminal proceedings. *See Barraza-Leon*, 575
14 F.2d 218.

15 The presence of attorneys at the challenged hearing, as opposed to the civil
16 deportation hearing in *Calles-Pineda*, allows for the magistrate judge to determine that
17 a plea has been entered knowingly, intelligently, and voluntarily, even if more
18 individuals' cases are resolved than the outer-limit suggested in *Calles-Pineda*. The
19 addition of the attorneys at the Appellants' hearing provides sufficient protection to offset
20 the increased private interest at stake in the Appellants' criminal hearing compared to the
21 civil deportation hearing in *Calles-Pineda*. Therefore, under the *Matthews* balancing test
22 this Court finds the addition of legal counsel for the Appellants sufficiently offsets the
23 increased private interest at stake and the hearing complies with due process.

24 Moreover, the record on review adequately shows that the pleas were knowingly,
25 intelligently, and voluntarily entered. "The process due in any given instance is
26 determined by weighing "the private interest that will be affected by the official action"
27 against the Government's asserted interest, "including the function involved" and the
28 burdens the Government would face in providing greater process." *Hamdi v. Rumsfeld*,

- 13 -

1  542 U.S. 507, 529 (2004) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). In
2  *Boykin v. Alabama,* the Supreme Court determined that due process requires the Court
3  create a record adequate for review that the waived rights were waived intelligently and
4  understandably. 395 U.S. 238, 243-44, 89 S. Ct. 1709 (1969). The Ninth Circuit has
5  affirmatively stated that while due process requires a record adequate for review and it
6  would be "helpful to have a record of the precise, individual statements of each
7  respondent in multiple deportation hearings, due process does not require it." *Barraza-*
8  *Leon*, 575 F.2d at 221.
9  In this case, as in *Barraza-Leon*, the Court did not record individual statements
10 from the Defendants regarding whether the plea was entered knowingly, intelligently, and
11 voluntarily. Instead the record only reflect general yes or no answers.
12 The Appellants argue more process is due in this case than at a deportation hearing.
13 However, the presence of Appellants' counsel provide sufficient protection in the
14 process to offset the increased private risk. Therefore, under the *Matthews* balancing test,
15 the Court finds the addition of the legal counsel for Appellants sufficiently offsets the
16 increased private interest at stake and the hearing and the record created complies with
17 due process.

*Structural vs. Harmless Error Analysis*

20 Appellants argue that even if the government is able to prove beyond a reasonable
21 doubt that the variance under Rule 11 was harmless, this Court should still overturn the
22 convictions because the error was structural in nature. Appellants' Opening Mem. at 8.
23 Even if the Court had found there was error in the plea proceedings, the Court finds that
24 such error would be harmless. In discussing whether to apply harmless error analysis or
25 structural error analysis, the Fourth Circuit Court of Appeals stated:

> Correctly applied, harmless error and structural error analyses produce identical results: unfair convictions are reversed while fair convictions are affirmed. Expanding the list of structural errors, however, is not mere legal abstraction. It can be a dangerous endeavor. There is always the risk that a sometimes-harmless error will be classified as structural, thus resulting in

> the reversal of criminal convictions obtained pursuant to a fair trial. Given this risk, judges should be wary of prescribing new errors requiring automatic reversal. Indeed, before a court adds a new error to the list of structural errors...the court must be certain that the error's presence would render every such trial unfair.

*Sherman v. Smith*, 89 F.3d 1134, 1138 (4th Cir. 1996). On the list of errors the Supreme Court has considered to be structural, thus warranting automatic reversal, are the denial of the right to a jury verdict of guilt beyond a reasonable doubt, the denial of the right of self-representation at trial, the denial of the right to public trial, the total deprivation of the right to counsel, and the presence of a biased judge. *Id.* Structural error affects the "entire conduct of the trial from beginning to end," and therefore cannot be harmless. *Arizona v. Fulminante*, 499 U.S. at 309. In *Sherman*, a murder case, the Fourth Circuit held that the fact that a juror visited the crime scene was not a structural defect and could be analyzed as harmless error. 89 F.3d at 1137. Where a defendant has counsel and is tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. *Castillo v. Stainer*, 997 F.2d 669, 669 (9th Cir. 1993). Also, Rule 11 was amended to state that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed.R.Crim.P. 11(h).

Rule 11 requires that a court address the defendant personally to determine the factual basis for the guilty plea and the voluntariness of the plea. As the Court has previously stated, the magistrate judge did address the Appellants "personally." Even if "personally" is to be read as "individually," as Appellants would suggest, the conclusion that ADPI as it is conducted always violates Rule 11 does not necessarily follow. The magistrate judge stated that she did not understand Appellants' objection until after sentencing had been completed, but she indicated that had she known what Appellants' counsel meant when he objected, she could have addressed Appellants' concern. Appellants's Excerpts of R. at 42. The fact that the defect Appellants alleges to have existed during the ADPI proceedings can be corrected at the time of the proceedings and the defect does not affect the entire conduct of a trial from beginning to end, seems to

distinguish the error in this case from denial of the right to a jury verdict of guilt beyond a reasonable doubt, or any of the structural errors mentioned above. Moreover, Appellants have not argued that, had the magistrate judge initially addressed Appellants individually when establishing the factual basis and voluntariness of Appellants' guilty pleas, Appellants would not have pled guilty or the court would not have accepted the plea. Therefore, the error cannot be said to affect substantial rights. The Court finds that the ADPI proceedings do not constitute a structural defect.

Accordingly, IT IS ORDERED The judgments of convictions and sentences of Abimael Roblero-Solis and Janet Roblero-Perez are AFFIRMED.

DATED this 8th day of August, 2008.

_____
Cindy K. Jorgenson
United States District Judge